UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AMY HEIDEN<br>302 S. Fairfax Street<br>Alexandria, VA 22314,<br><br>  Plaintiff,<br><br>  v.<br><br>AMDOCS, INCORPORATED<br>45365 Vintage Park Plaza<br>Sterling, VA 20166,<br><br>  Serve Resident Agent:<br><br>  CT Corporation System<br>  4701 Cox Road, Ste. 285<br>  Glen Allen, VA 23060,<br><br>  Defendant. | Case No. 1:15-cv-00273-CMH-MSN |

**FIRST AMENDED COMPLAINT FOR EQUITABLE AND
MONETARY RELIEF AND DEMAND FOR JURY TRIAL**

Plaintiff Amy Heiden, by and through counsel, hereby files her First Amended Complaint against Amdocs, Incorporated for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, and The Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d).

**Jurisdiction and Venue**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is an action arising under the laws of United States, specifically, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

1

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is an action arising under the laws of United States, specifically, The Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d).

3. Plaintiff Heiden has exhausted the administrative remedies available to her under 42 U.S.C. §§ 2000e, *et seq.* The U.S. Equal Employment Opportunity Commission issued Heiden a Notice of Right to Sue on January 14, 2015. This Complaint and Demand for Jury Trial is timely filed within the ninety day period afforded by 42 U.S.C. §§ 2000e-5(f)(1).

4. This Court has personal jurisdiction over the Defendant because it has substantial contacts with and transacts significant business within the Commonwealth of Virginia.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the acts that form the basis of this complaint occurred in this District and this Division. Additionally, venue is proper in this Court because Plaintiff works from her home located at 301 S. Fairfax Street, Alexandria, Virginia 22314.**Parties**

5. Plaintiff is a resident of the City of Alexandria in the Commonwealth of Virginia and a citizen of the United States.

6. Amdocs is based in Israel, with its U.S. headquarters in Missouri. Amdocs has offices in the Commonwealth of Virginia, including in Sterling, Virginia.

**Factual Allegations**

7. Heiden is a female, living in Alexandria, Virginia.

8. Heiden worked at AT&T until her group was outsourced to Amdocs, as of approximately December 2007.

9. Heiden began working at Amdocs on or about February 25, 2008 as Group Lead on the AT&T's Managed Services account ("AT&T account"), working in the Legacy Competency Center.

2

10. Jeff May, Senior Technical Director of AT&T Information Technology, became Heiden's supervisor in or about 2006, prior to the transition from AT&T to Amdocs.

11. Jeff May's title changed to Development Manager at Amdocs, and he continued to supervise Heiden.

12. In or about April 2013, Amdocs temporarily removed May from the AT&T account, and assigned him to work on multiple initiatives outside the AT&T account.

13. From approximately April 2013 to about March 2014, May worked on the Order2Automation ("O2A") initiative, serving client US Cellular, as well as clients TIM and CLARO in Brazil. May was a key contributor in aligning O2A to service level agreement (SLA) targets. In addition, May was assigned to a Business Development role and began working with CenturyLink, making multiple client site visits. May's work on these projects required him to frequently travel internationally and domestically.

14. Amdocs' time charging details support that Amdocs assigned May to various initiatives outside the AT&T account from approximately April 2013 to about March 2014.

15. During May's work away from the AT&T account, from approximately April 2013 to about March 2014, Heiden acted as the Development Manager and performed May's prior duties in addition to her own.

16. The clients of the AT&T account can corroborate that Heiden acted as the Development Manager for the AT&T account from approximately April 2013 to about March 2014.

17. Linda Garza ("Garza"), Senior Technical Director of AT&T Mobility and Home Solutions Information Technology, a client of the AT&T account, can corroborate that Heiden

acted as the Development Manager for the AT&T account from approximately April 2013 to about March 2014.

18. Jenn Milbrod, Senior-Tech Vendor Management and a member of Garza's team, can corroborate that Heiden acted as the Development Manager for the AT&T account from approximately April 2013 to about March 2014.

19. May did not participate in supporting AT&T's major release weekend in October 2013.

20. When Heiden stepped in to fill in May's role, her additional responsibilities included handling escalations, internal audits, personnel related tasks, status reports to upper management, upper management staff meeting presentations, offshore supplier contacts, and interface with AT&T client oversight.

21. While filling in for May, Heiden was also responsible for deliveries and for her team's development of complex plans to support several new large scale projects.

22. From approximately June 2013 to approximately December 2013, Amdocs assigned Kenneth Brown ("Brown"), Development Expert, to work outside the AT&T account.

23. While Brown worked outside the AT&T account, Heiden performed a large portion of Brown's work, such as overseeing VPMO and other infrastructure projects, in addition to her own duties responsibilities and also taking on May's prior duties and responsibilities.

24. On or about September 10, 2013, Kenneth Baran, Director of Amdocs, sent Heiden an email, thanking her for filling in for May and Brown while they were away working on other initiatives. Baran wrote, "Thanks for taking care of shop (and continue to do so) while **Jeff and Ken** are out working the O2A USCC initiative." (emphasis in original).

25. Heiden did not receive any additional compensation for the period of April 2013 to March 2014, for performing her job responsibilities in addition to May's and Brown's.

26. Heiden received an annual salary of $112,800 as of July 2013.

27. In September 2013, Heiden received a bonus of $1,000.

28. Heiden received an annual salary of $116,500 as of July 2014.

29. In or about January 2014, Heiden received a bonus of $10,000.

30. On or about April 1, 2014, Heiden received a bonus of $900.

31. During her tenure at Amdocs, Heiden has received uniformly high performance reviews.

32. May recommended Heiden for a promotion to Development Manager in his review of her performance in Heiden's performance reviews for fiscal years 2008, 2009, 2010, 2011, 2012, and 2013.

33. In his evaluation of Heiden's performance during the 2013 fiscal year, May acknowledged that Heiden acted as the Development Manager while he was away working on a special assignment.

34. In his evaluation of Heiden's performance during the 2013 fiscal year, May noted that Heiden performed the duties of a development manager well. May wrote:

> Amy has worked most of the year covering my duties as a Development Manager while I am on special assignment. Amy has performed very well in this role, keeping all operations running smoothly [*sic*] and projects progressing. Amy has a very good working relationship with the AT&T clients and is well respected by the Amdocs teams that she leads. Amy is fully capable of performing the Development Manager role and has performed the job well while I have been on special assignment. I recommend Amy for a Development Manager position if the opportunity arises.

35. In preparation for the end of year assessment for the 2014 fiscal year, on or about July 31, 2014, Heiden requested that May provide some feedback on Heiden's work to Mary Dickson and James Radtke, both Development Managers for Amdocs' Legacy Competency Center.

36. In an email to Dickson and Radtke, on or about August 8, 2014, May wrote:

> As background I worked on special assignment from June to December last year on O2A. Amy was a Group Lead in my team and during my assignment **she stepped in and took over the management of my team while I was on that assignment**. I returned to my job mid-December, but transitioned to my current job in March and Amy moved Jim's team as a Group Lead. Amy is a very capable manager and covered all of my duties well during my assignment. Ken Baran wanted to promote her to Development Manager to backfill me but there was not budget available for that. Amy has all of the experience and capability to perform the Development Manager role and I hope that opportunity comes to her at some point in her Amdocs career. As for feedback on her performance, Amy has very strong communication, coordination, and leadership skills. She partners very well with the AT&T clients and takes ownership of the team members which creates a very positive teaming environment. I would rate her very high as a G[roup] L[ead] as **she is essentially a Dev[elopement] Manager working in a G[roup] L[ead] assignment**.

(emphasis added).

37. On or about March 6, 2014, Heiden met with Baran to discuss Baran's meeting with Judy Franz, Vice President of Amdocs, to discuss promoting Heiden to May's position as Development Manager. Baran informed Heiden that Amdocs was considering eliminating May's position. Baran explained to Heiden that he would continue to push for her promotion to Development Manager because he believed that it was only right that Amdocs promote Heiden to May's position and rectify Heiden's pay disparity.

6

38. On or about March 14, 2014, Baran informed Heiden that Amdocs was eliminating May's position. On or about March 21, 2014, Heiden met with Baran to discuss Baran's meeting with Human Resources regarding Heiden's compensation and possible promotion. Baran explained to Heiden that Human Resources did not want to take any action with respect to Heiden's compensation.

39. On March 24, 2014, Amdocs announced that May would transition from his role as Development Manager to Director of Sales.

40. On or about April 1, 2014, Heiden met with Baran and reviewed the facts of her complaint about pay disparity. Heiden and Baran reviewed Heiden's draft letter to Jill Teslow, Amdocs' Human Resources representative, which detailed Heiden's concerns about pay disparity.

41. On or about April 1, 2014, after Baran notified Heiden that Amdocs would not adjust her compensation to reflect her work when she backfilled for May and Brown while they were assigned to tasks outside the AT&T account, Heiden sent an email to Teslow, detailing her complaints of unequal pay. Heiden wrote:

> I'm writing to you concerning the recent news I received from Ken Baran regarding my compensation. Namely, Ken has informed me that following his recent discussion with HR on this subject, there is no expected adjustment to my compensation. I believe the result of this decision is a **discrepancy between my compensation and my duties, particularly compared to my male colleagues who perform duties at a comparable level.**

(emphasis added).

42. In her April 1, 2014 email to Teslow, Heiden explained the extra responsibilities she had assumed as a result of May and Brown being assigned to responsibilities outside the

7

AT&T account. Specifically, Heiden wrote, "**Though I am categorized as a band 3 employee, I have been performing band 4 work.**" (emphasis added).

43. In her April 1, 2014 email to Teslow, Heiden requested a discussion about "possibilities for rectifying" the discrepancy in her pay compared to her male counterparts, "including a possible retroactive salary increase for some portion of the period of April 2013 to the present."

44. On or about April 11, 2014, Heiden sent an email to Baran, attaching her April 1, 2014 email to Teslow. Heiden wrote:

> My job content and level of responsibility was at the band 4 level from June 2013 through December 2013, when multiple team members were assigned to O2A. I performed my Group Lead responsibilities in addition to the Development Manager role during that extended time period. I estimate that my job content included the band 4 Development Manager role for 40-50% of the time from April 2, 2013 through March 26, 2014, when the transition started to new Development Managers Jim Radtke, Greg Painter and Ken Skupien.
>
> **My responsibilities during these extended periods were <u>substantially similar</u> to those previously and currently performed by <u>male colleagues who benefit from higher compensation</u>.** Therefore, I believe that the Equal Pay Act entitles me to increased compensation for my work during those periods. I respectfully request a one time payment to bring my compensation in line with those male managers in my work group (Jeff May, Jim Radtke, Ken Skupien, Greg Painter) who were/are categorized as band 4 and who were/are performing the same functions I performed during the times mentioned above.

(emphasis added).

45. In her April 11, 2014 email to Baran, Heiden identified May, Radtke, Ken Skupien, and Greg Painter as her male comparators who received higher pay than her for performing the same job functions.

8

46. On or about April 11, 2014, shortly after Heiden's email to Baran, Heiden and Baran met to discuss Heiden's email and concerns. Baran indicated that he would discuss Heiden's concerns with Teslow and Franz.

47. On or about April 18, 2014, Heiden had a conference call with Teslow and Baran, to follow up on Heiden's April 1, 2014 email to Teslow and her April 11, 2014 email to Baran. During this call, Teslow indicated that she had consulted with Amdocs' internal and external counsel and Amdocs would not change its position that it owed Heiden additional compensation.

48. During the conference call on or about April 18, 2014, Teslow informed Heiden that Amdocs will not respond to Heiden's letters alleging discrimination based on her sex.

## COUNT I
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e, *et seq*.
### Discrimination Based on Gender

49. Plaintiff incorporates the allegations set forth in the preceding paragraphs as though fully alleged herein.

50. Heiden is a "person" and an "employee," and Amdocs is an "employer" as those terms are defined at 42 U.S.C. § 2000e.

51. Amdocs violated 42 U.S.C § 2000e-2 by discriminating against Heiden because of her gender.

52. Heiden is a woman (female).

53. Heiden's comparators, including Jeff May, Ken Skupien, James Radtke, and Greg Painter are men (male).

54. During May's absence, Heiden performed work that required at least equal, if not more skills, effort, and responsibility, under similar working conditions as those of her male colleagues.

9

55. During Brown's absence, Heiden performed work that required at least equal, if not more skills, effort, and responsibility, under similar working conditions as those of her male colleagues.

56. During May's and Brown's absence, Heiden performed May's and Brown's job duties in addition to her own duties.

57. Amdocs compensated Heiden's male colleagues at a higher salary range than Heiden.

58. Amdocs discriminated against Heiden by treating her inconsistently with other similarly situated male Amdocs employees for performing the same job duties and responsibilities.

59. Amdocs discriminated against Heiden based on my gender by compensating her male colleagues at a higher salary range than her.

60. Amdocs discriminated against Heiden based on her gender when it failed to compensate her comparable to employees who are of the opposite sex, work in the same "establishment" as her, perform work equal to the work performed by her, and retain positions that required equal skill, effort, responsibility and is performed under similar conditions as compared to her.

61. Amdocs discriminated against Heiden based on her gender when it declined to rectify the pay disparity between Heiden and her male comparators after Heiden pointed out the pay disparity to Amdocs.

62. Heiden has exhausted her administrative remedies.

63. Heiden has been damaged by Amdocs' discriminatory acts.

64. Heiden is entitled to damages in an amount to be determined at trial.

65. For violations of 42 U.S.C. §§ 2000e, *et seq.*, Heiden demands such legal or equitable relief as provided by 42 U.S.C. §§ 2000e, *et seq.*, including, but not limited to, the following:

      a. Promotion;
      b. Economic damages including front and back pay;
      c. Reasonable attorneys' fees and costs;
      d. Punitive damages; and
      e. Any other relief that this Court deems just and equitable.

## COUNT II
### The Equal Pay Act of 1963 ("EPA")
### 29 U.S.C. § 206(d)
### Unequal Pay

66. Plaintiff incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

67. Heiden is an "employee" as the term is defined in 29 U.S.C. § 203(e).

68. Amdocs is an "employer" as the term is defined at 29 U.S.C. § 203(d).

69. Heiden is a woman (female).

70. Heiden's comparators, including Jeff May, Ken Skupien, James Radtke, and Greg Painter are men (male).

71. During May's absence, Heiden performed work that required at least equal, if not more skills, effort, and responsibility, under similar working conditions as those of her male colleagues.

72. During Brown's absence, Heiden performed work that required at least equal, if not more skills, effort, and responsibility, under similar working conditions as those of her male colleagues.

73. During May's and Brown's absence, Heiden performed May's and Brown's job duties in addition to her own duties.

74. Heiden's male colleagues are compensated at a higher salary range than Heiden.

75. Amdocs failed to compensate Heiden comparable to employees who are of the opposite sex, work in the same "establishment" as Heiden, perform work equal to the work performed by Heiden, and retain positions that required equal skill, effort, responsibility and is performed under similar conditions as compared to Heiden.

76. As the direct and proximate result of Amdocs' violation of 29 U.S.C. § 206(d), Heiden was caused to suffer damages.

77. Furthermore, Amdocs' violation of 29 U.S.C. § 206(d) was reckless and willful.

78. Amdocs ignored Heiden's multiple complaints about her pay disparity and also ignored Heiden's requests that Amdocs rectify her pay disparity.

79. Amdocs knowingly and willfully set Heiden's pay at a level that was substantially below her male colleagues who performed the same work.

80. Heiden is entitled to damages in an amount to be determined at trial.

81. For violations of 29 U.S.C. § 206(d), Heiden demands such legal or equitable relief as provided by 29 U.S.C. § 216(b), including, but not limited to, the following:

   a. Promotion;
   b. Economic damages including front and back pay;
   c. Reasonable attorneys' fees and costs;
   d. Liquidated damages; and
   e. Any other relief that this Court deems just and equitable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Amy Heiden prays this Honorable Court for judgment against the Defendant, in the amount of economic damages and liquidated damages, compensatory damages, equitable relief (including upgrading Plaintiff's employment status), punitive damages, reasonable attorney's fees and costs of this action, and any other relief that this Court deems just

and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff Amy Heiden demands a trial by jury for any and all issues proper to so be tried.

                              Plaintiff Amy Heiden
                              *By Counsel*

Dated: March 4, 2015                  /s/
                              Adam Augustine Carter, Esq.
                              VSB# 32722
                              R. Scott Oswald, Esq.
                              VSB# 41770
                              The Employment Law Group, P.C.
                              888 17th Street, NW, 9th floor
                              Washington, D.C. 20006
                              (202) 261-2806
                              (202) 261-2835 (facsimile)
                              acarter@employmentlawgroup.com
                              soswald@employmentlawgroup.com

                              *Counsel for the Plaintiff Amy Heiden*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2015, a copy of the First Amended Civil Complaint for Equitable and Monetary Relief and Demand For Jury Trial was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

    Deona T. DeClue, VA -- 85933
    Laura Jordan
    Suite 600
    1909 K Street, N.W.
    Washington, D.C. 20006
    202-585-6900
    FAX 202-585-6969
    ddeclue@thompsoncoburn.com

    *Counsel for Defendant Amdocs, Inc.*

    _____/s/_____
    Adam Augustine Carter, Esq.
    VSB# 32722
    R. Scott Oswald, Esq.
    VSB# 41770
    The Employment Law Group, P.C.
    888 17th Street, NW, 9th floor
    Washington, D.C. 20006
    (202) 261-2806
    (202) 261-2835 (facsimile)
    acarter@employmentlawgroup.com
    soswald@employmentlawgroup.com

    *Counsel for the Plaintiff Amy Heiden*